UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEYSHA CRUZ, individually, and
NEYSHA CRUZ, as p/n/g of O.F.,

                              Plaintiff,

        - against -


NEW YORK CITY DEPARTMENT OF
EDUCATION,
                              Defendant.

**ORDER**

19 Civ. 856 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

            Plaintiff Neysha Cruz is the mother of O.F., a 15-year-old boy with

developmental impairments.  In this action against Defendant New York City Department of

Education ("DOE"), she seeks injunctive relief under the Individuals with Disabilities Education

Act ("IDEA").  (Cmplt. (Dkt. No. 1))  Plaintiff appeals from an April 5, 2019 order of a state

review officer ("SRO") which, <u>inter alia</u>, found that the International Institute for the Brain (the

"Brain Institute") constitutes O.F.'s pendency placement.  The SRO ordered DOE to pay O.F.'s

tuition at the Brain Institute retroactive to September 14, 2018.  (Apr. 5, 2019 SRO Decision

(Dkt. No. 35-1) at 11)[1]  In accordance with the SRO's decision, DOE paid O.F.'s tuition for the

2018-19 school year, retroactively to September 14, 2018.  Plaintiff contends that DOE is

obligated to pay O.F.'s tuition at the Brain Institute retroactive to July 9, 2018.  (Pltf. Opp. (Dkt.

No. 60) at 6)

            Pursuant to Federal Rule of Civil Procedure 12(b)(1), DOE has moved to dismiss

for lack of subject matter jurisdiction, arguing that Plaintiff's claims are moot.  DOE has also

---

[1]  All citations to page numbers refer to the pagination generated by this District's Electronic
Case Files ("ECF") system.

moved to dismiss for failure to state a claim under Rule 12(b)(6).  For the reasons stated below, DOE's Rule 12(b)(6) motion to dismiss will be granted .

## BACKGROUND

### I.    FACTS

Plaintiff is the mother of O.F., a 15-year-old boy who suffers from a brain injury, cerebral palsy, and a seizure disorder.  (Cmplt. (Dkt. No. 1) ¶¶ 6-7)  These impairments have significantly affected O.F.'s educational abilities and performance.  (Id. ¶ 7)  He is non-verbal and non-ambulatory, and he requires a high degree of individualized attention and intervention in the classroom.  (Id.)

During the 2017-18 school year, O.F. was a student at the International Academy of Hope ("Hope Academy").  (Id. ¶ 9)  At Hope Academy, O.F. had an extended school day and a twelve-month academic program.  (Id.)  In a January 12, 2018 decision, an impartial hearing officer ("IHO") found that Hope Academy was "meeting [O.F.'s] extensive needs," and that he was "benefiting from his time at" the school.  (Jan. 12, 2018 IHO Decision (Dkt. No. 13-1) at 8) The IHO directed DOE to pay O.F.'s tuition at Hope Academy for the 2017-18 year (id. at 10), and DOE did so without appealing.  (Cmplt. (Dkt. No. 1) ¶ 9; Def. Br. (Dkt. No. 55) at 8, 10 n.2)

On June 21, 2018, Plaintiff provided DOE "with a ten (10) day notice" that she intended to place O.F. in a different school for the 2018-19 school year – the Brain Institute.[2] (Cmplt. (Dkt. No. 1) ¶ 11; 10-Day Notice Ltr. (Dkt. No. 13-1) at 15)  On July 9, 2018, Plaintiff began school at the Brain Institute.  (Apr. 5, 2019 SRO Decision (Dkt. No. 35-1) at 6 n.5)  That same day, Plaintiff filed a due process complaint against the DOE, seeking, inter alia, a "stay-

---

[2]  See 20 U.S.C. § 1412(a)(10)(C)(iii) (providing that parents in certain circumstances must provide 10 days' notice to the relevant public agency before enrolling their disabled child into a private school to be eligible for funding).

put" pendency order under 20 U.S.C. § 1415(j) requiring DOE to fund O.F.'s placement at the

Brain Institute during the 2018-19 school year while Plaintiff's complaint was adjudicated.[3]

(Cmplt. (Dkt. No. 1) ¶ 12; Jan. 12, 2018 IHO Decision (Dkt. No. 13-1) at 9)

## II.    PROCEDURAL HISTORY

### A.    The IHO's September 4, 2018 Decision

An IHO conducted a pendency hearing on August 24, 2018.  (Cmplt. (Dkt. No. 1)

¶¶ 13-14)  At the hearing, Plaintiff argued that the Brain Institute's educational program for O.F.

was "substantially similar" to O.F.'s educational program at Hope Academy, and therefore the

Brain Institute constituted Plaintiff's pendency placement.  (Id. ¶ 14; Aug. 24, 2018 Hearing Tr.

(Dkt. No. 13-1) at 34-37)  At the hearing, however, the Brain Institute's director of special

education testified that the school's vision services department would not be fully staffed until

September 2018.  (Aug. 24, 2018 Hearing Tr. (Dkt. No. 13-1) at 49-50)

In a September 4, 2018 Interim Order on Pendency, the IHO found that "the

reasons why O.F. can no longer attend [Hope Academy] [are] fundamental to a determination of

pendency where pendency lies in a parental placement."  (Sept. 4, 2018 IHO Decision (Dkt. No.

13-1) at 66)  The IHO therefore directed Plaintiff to "produce evidence regarding why O.F. can

no longer continue attending [Hope Academy] for the 2018/19 school year for the purpose of

determining pendency."  (Id. at 67)  "Absent such evidence," the IHO would not hear "the issue

of a substantially similar placement."   (Id.)  Plaintiff appealed the IHO's decision to an SRO.

(Cmplt. (Dkt. No. 1) ¶ 16)

---

[3]  See T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 152 (2d Cir. 2014) ("[T]he
IDEA's pendency provision entitles a disabled child to 'remain in [his] then-current educational
placement' while . . . administrative and judicial proceedings . . . are pending. . . . That provision
seeks to maintain the educational status quo while the parties' dispute is being resolved.")
(quoting 20 U.S.C. § 1415(j)).

### B.     The SRO's November 16, 2018 Decision

In a November 16, 2018 decision, an SRO concluded that when a parent unilaterally changes a child's placement, a school district may nonetheless be required to fund the new placement where it is "substantially similar to the private programing that was endorsed in the ruling granting the parent[] tuition reimbursement."  (Nov. 16, 2018 SRO Decision (Dkt. No. 13-1) at 83)  While finding that it was not unreasonable for the IHO to inquire why O.F. could no longer attend Hope Academy, the SRO ruled that the IHO erred in making the "substantial similarity" determination "contingent on the parent's production of evidence that the student can no longer attend [Hope Academy]."  (Id. at 87)  According to the SRO, it was improper to "require that the parent first show the student was incapable of attending the [prior] school before reaching the issue of substantial similarities."  (Id.)

The SRO concluded that a remand was necessary because the evidentiary record was "incomplete."  (Id. at 86)  The SRO directed the IHO to determine, on remand, whether (1) O.F. was receiving necessary vision services at the Brain Institute, and (2) the parent counseling and training services and assistive technology services offered at the Brain Institute were comparable to those provided at Hope Academy.  (Id.)  Once the IHO had made these determinations, the SRO directed the IHO to proceed as follows:

> If, after comparing the similarity or lack thereof between [Hope Academy] and [the Brain Institute] with regard to the student's vision services, parent counseling and training services, and assistive technology services, the [IHO] finds no significant changes, the [IHO] should enter an order directing the district to fund the student's stay-put at [the Brain Institute].  In the event that [the Brain Institute] was unable to implement all of the student's programming at the beginning of the school year but became able to at some point thereafter (i.e., vision services became available at some later date), the [IHO] should determine the date at which the two programs became substantially similar and issue a directive awarding reimbursement from the date that the two programs became substantially similar.

(Id.)

### C.    The IHO's November 22, 2018 Decision

In a November 22, 2018 decision, the IHO ruled that the Brain Institute was not O.F.'s pendency placement.  (Nov. 22, 2018 IHO Decision (Dkt. No. 13-1) at 90-93) Notwithstanding the SRO's November 16, 2018 decision, the IHO "declin[ed] to address the issue of substantial similarity of the [Hope Academy] and [Brain Institute] placements," because "the fundamental issue of why the student was removed by the parent from [Hope Academy] was not answered by the parent."[4]  (Id. at 93)

### D.    Prior Federal Court Action

On December 21, 2018, Plaintiff commenced an action in this District seeking, inter alia, an order vacating the IHO's November 22, 2018 decision and designating the Brain Institute as O.F.'s pendency placement.  See Cruz v. N.Y.C. Dep't of Educ., No. 18 Civ. 12140 (PGG), 2019 WL 147500, at *1 (S.D.N.Y. Jan. 9, 2019).  The Court concluded that "[t]he hearing officer [had] ignored the [SRO's] directive" to determine "substantial similarity."  Id. at *6.  The Court vacated the IHO's November 22, 2018 decision, and ordered the IHO to comply with the SRO's directive and "issue a revised Final Order of Pendency addressing, inter alia, whether the educational placement provided by the Brain Institute is substantially similar to the placement provided by Hope Academy in the 2017-18 school year."  Id. at *11.

### E.    The IHO's January 23, 2019 Amended Decision

On January 23, 2019, the IHO issued an amended decision finding that the Brain Institute's educational program for O.F. was substantially similar to the Hope Academy's

---

[4]  The IHO does not address the SRO's decision, and it is not clear that the IHO had the SRO's November 16, 2018 ruling when he issued his November 22, 2018 decision.  See id. at 94-95.

educational program for O.F., and ordered DOE to "fund tuition for O.F. to attend [the Brain Institute] as pendency in this matter."  (Jan. 23, 2019 IHO Officer Decision (Dkt. No. 13-1) at 126-27)  The IHO reasoned that "O.F. is receiving parent counseling and training, assistive technology, and hearing education services at [the Brain Institute] that are substantially similar to the same services received at [Hope Academy] in the 2017/18 school year."[5]  (Id. at 127)  The IHO ordered DOE to pay O.F.'s full tuition from July 10, 2018 on.[6]  (Jan. 23, 2019 Hearing Officer Decision (Dkt. No. 13-1) at 127)  Citing a "[c]onflict of [i]nterest," and without offering any further explanation, the IHO recused himself after issuing his decision.  (Jan. 24, 2019 Notification (Dkt. No. 13-1) at 132)

On January 24, 2019, DOE informed Plaintiff's counsel that DOE was contemplating an appeal (Jan. 23, 2019 email (Dkt. No. 13-1) at 137), and on January 28, 2019, DOE notified Plaintiff's counsel that DOE would not fund O.F.'s education at the Brain Institute while DOE's appeal was pending.  (Jan. 28, 2019 email (Dkt. No. 13-1) at 136)  Plaintiff commenced the instant action on January 20, 2019.  (Cmplt. (Dkt. No. 1))

F.     **The SRO's April 5, 2019 Decision**

On March 4, 2019, DOE appealed the IHO's January 23, 2019 pendency decision. (Mar. 4, 2019 DOE Appeal Papers (Dkt. No. 26-2) at 1-17)  Although DOE conceded that the programs at the two schools were substantially similar as of September 14, 2018 – when the

---

[5]  The IHO's reference to "hearing education services" – rather than "vision services" – was apparently a typographical error.  See Apr. 5, 2019 SRO Decision (Dkt. No. 35-1) at 5 (discussing error))

[6]  The IHO selected July 10, 2018 because Plaintiff's due process complaint was filed on that day.  According to the SRO, however, Plaintiff's due process complaint was filed on July 9, 2018 – the same day O.F. started school at the Brain Institute.  (Apr. 5, 2019 SRO Decision (Dkt. No. 35-1) at 5 n.3, 6 n.5)

Brain Institute began to offer O.F. vision education services – DOE argued that the schools'

programs were not substantially similar until that time. (Id. at 11-12)

The SRO began her analysis by noting the similarities between the Hope

Academy and Brain Institute programs:

> [T]he program provided to the student at [the Brain Institute] for the 2018-19 school year and the program provided to the student at [Hope Academy] during the 2017-18 school year included placement in a 6:1+1, special class, along with related services including: five 60-minute sessions of individual PT per week, five 60-minute sessions of individual OT per week, five 60-minute sessions of speech-language therapy per week, two individual sessions of assistive technology services per week, and one 60-minute session per month of parent counseling and training.

(Apr. 5, 2019 SRO Decision (Dkt. No. 35-1) at 7) (internal citations and footnotes

omitted)  "[W]hile both programs eventually provided for two 60-minute sessions of

individual vision education services, [the Brain Institute] was not able to provide the

student with vision education services until September 14. 2018." (Id.) (citation omitted).

The SRO then discussed in detail the significance of vision education services to

O.F.:

> With respect to the student's visual deficits, the hearing record . . . shows that the student has been diagnosed with a cortical visual impairment.
>
> A March 14, 2017 Functional Vision Assessment indicated that the student required vision education services in order to "learn specialized strategies that will help him enhance his visual skills which will in turn improve his ability to communicate."  Furthermore, the evaluator noted that the student's traumatic brain injury (TBI) adversely impacted his visual functioning and that developing strategies in this area would "enhance his communication skills, motor skills and academic skills."  The evaluator noted that the student's attention was impacted by the "visual field" in which material was presented and the student's ability to perceive objects at a distance was "impacted by his visual perception deficits." The evaluator also indicated that the student "require[d] a high level of visual adaptations to access visual material," and recommended that the student continue to receive vision services two times per week for 60-minute sessions.  Moreover, the evaluator noted that since the student was non-verbal, vision was "a main sensory area that he should be able to utilize for learning," and that the more his

vision was "utilized and developed with specialized techniques and modifications . . . the greater his access to information would be," as well as his ability to communicate and use his assistive technology device effectively.

The March 17, 2017 proposed [Hope Academy] IEP indicated that vision education services were an important part of the student's program during the 2017-18 school year. In its discussion of the student's vision needs and services, the [Hope Academy] IEP recited, almost verbatim, the findings of the March 2017 vision evaluation, including the recommendation for two 60-minute sessions of vision services per week and that the student "required a high level of visual adaptations in order to access visual material," and that since the student was non-verbal, vision was a "main sensory area" that he needed in order to learn and communicate. The March 2017 [Hope Academy] IEP also indicated that the student would benefit from push-in and pull-out services in vision education and included several management needs related to the student's vision. The March 2017 [Hope Academy] IEP also included two vision education goals; the first goal stated that the student would visually locate items for academic learning, and the second goal stated that the student would improve his ability to visually locate items presented "in his right, left and lower fields with increased background noise."

The March 26, 2018 recommended [Brain Institute] IEP similarly identified the importance of vision education services for the student during the 2018-19 school year. The IEP indicated that the student had a TBI and was diagnosed with a cortical visual impairment. The [Brain Institute] IEP noted that "increases in functional vision would support the student's ability to gather both quality and quantity of information about people, environments, and material." The [Brain Institute] IEP further noted that since the student was nonverbal, vision was a "main sensory area that he should utilize for learning as his visual processing skills improve" and that "the more his vision was utilized and developed with specialized techniques and modifications, the greater [his] access to information would be." Moreover, according to the [Brain Institute] IEP improving the student's visual skills would ultimately help him increase his ability "to communicate and interact with his environment." The [Brain Institute] IEP acknowledged that the student required "consistent push-in and pull out vision services," and included several "vision management needs," as well as vision education goals. The student's vision education goals included the following: the student would visually locate a familiar object presented against increasingly complex backgrounds and the student would visually identify familiar landmarks in school in order to decide which rooms to visit during his free time. Finally, the [Brain Institute] IEP recommended vision education services twice per week for 60-minute sessions.

The [Brain Institute] IEP indicated that the student "had made significant progress toward both of his vision goals for the 2017-2018 school year;" specifically noting, the student was able to visually locate items such as books and

instruments when "light enhancers and moderate verbal prompting were provided, within 20-25 seconds, with 80% accuracy," and it was predicted that the student would achieve all benchmarks for this goal by the end of the 2017-18 school year. With respect to the student's second vision goal, the student was able to visually locate familiar items used in daily routines with moderate background noise, with 80% accuracy, and it was predicted that the student would achieve all benchmarks for the goal by the end of the 2017-18 school year. For the 2018-19 school year, the [Brain Institute] IEP included goals directed at having the student locate a familiar object or image presented against complex backgrounds and identify familiar landmarks at the school.

(Id. at 8-10) (citations, footnotes, and internal alterations omitted).

The SRO concluded that the record demonstrated "the importance of vision education services . . . in the student's respective programs." (Id. at 10) O.F. had not received vision education services at the Brain Institute prior to September 14, 2018, however, and the lack of these services precluded a finding of substantial similarity:

[T]here is no dispute that the student did not receive vision education services until September 14, 2018[.] [T]he parent does not provide an explanation as to how [the Brain Institute] could be considered substantially similar to [Hope Academy] where [the Brain Institute] did not provide a service that was an integral part of the student's program. The director of special education at [the Brain Institute] testified that [it] was "implementing the recommendations of the previous vision providers as they were laid out in their proposed '18/'19 IEP." She further testified that staff at [the Brain Institute] presented materials to the student that he would be able to access visually, which helped maintain and support his vision goals. However, there is no indication in the hearing record that staff at [the Brain Institute] worked on the student's vision goals during the first eight weeks of the school year. Additionally, while the [Brain Institute] IEP indicated that it was reviewed in January 2019, there is no indication as to whether the vision section had been updated with information provided by staff at [the Brain Institute], as it appears to be based on the student's progress during the 2017-18 school year, explicitly stating that the student was expected to complete his goals for the 2017-18 school year. Further, while the affidavit of the [Brain Institute] director of special education indicated that any vision education services missed at the start of the school year would be made up during the 2018-19 school year, the affidavit was executed in January 2019 and there is no indication that the student had begun receiving make-up services. Finally, the hearing record generally lacks information as to how missed services might have impacted the student's educational opportunity, or whether the provision of missed services at a later date would adequately make up for the services missed.

(Id.) (internal citations and alterations omitted).

Given the significance of vision education services to O.F., the SRO concluded that Brain Institute "program was not substantially similar to the program provided at [Hope Academy] until . . . the student . . . began receiving vision education services" on September 14, 2018. (Id.) As a result, the SRO ordered DOE to "fund the student's placement at [the Brain Institute] from September 14, 2018 through the pendency of this proceeding." (Id. at 11)

On April 19, 2019, DOE processed a payment of $175,962.17 to the Brain Institute to cover O.F.'s tuition from September 14, 2018 through June 26, 2019, which is the amount owed under the SRO's decision. (Liu Decl. (Dkt. No. 56) ¶ 2) In a November 11, 2019 decision, a newly assigned IHO dismissed Plaintiff's underlying due process complaint as moot, because Plaintiff had received all relief to which she was entitled in the pendency proceedings, and the school year at issue (the 2018-19 year) had ended. (Def. Br. (Dkt. No. 55) at 11 n.4; Pltf. Opp. (Dkt. No. 60) at 23 n.5; Nov. 2019 Hearing Officer Decision (Dkt. No. 44-1) at 4-12)

G.  **The Instant Action**

The Complaint in the instant action was filed on December 21, 2018, and seeks an injunction directing DOE to pay O.F.'s tuition at the Brain Institute for the entire 2018-19 school year, starting from July 9, 2018. (Cmplt. (Dkt. No. 1); Jan. 23, 2019 IHO Decision (Dkt. No. 13-1) at 127; Pltf. Opp. (Dkt. No. 60) at 6)

DOE has moved to dismiss under (1) Fed. R. Civ. P. 12(b)(1), arguing that this Court lacks subject matter jurisdiction because this action is moot; and (2) Fed. R. Civ. P. (b)(6), for failure to state a claim. (Def. Br. (Dkt. No. 55))

**DISCUSSION**

I.    **LEGAL STANDARDS**

    A.    **Rule 12(b)(1) Standard**

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction) . . . ." <u>Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.</u>, 549 U.S. 422, 430-31 (2007).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000).  When subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'"  <u>APWU v. Potter</u>, 343 F.3d 619, 623 (2d Cir. 2003) (quoting <u>Lunney v. United States</u>, 319 F.3d 550, 554 (2d Cir. 2003)).

In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs."  <u>J.S. ex rel. N.S. v. Attica Cent. Sch.</u>, 386 F.3d 107, 110 (2d Cir. 2004).  The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits."  <u>Id.</u>  In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.'"  <u>Greenblatt v. Gluck</u>, 03 Civ. 597 (RWS), 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting <u>Hertz Corp. v. City of New York</u>, 1 F.3d 121, 125 (2d Cir. 1993)).

Mootness "is a condition that deprives the court of subject matter jurisdiction."  <u>Fox v. Board of Trustees of the State University of New York</u>, 42 F.3d 135, 140 (2d Cir. 1994).  "The mootness doctrine, which is mandated by the 'case or controversy' requirement in Article

11

III of the United States Constitution, requires that federal courts may not adjudicate matters that no longer present an actual dispute between parties." <u>Catanzano v. Wing</u>, 277 F.3d 99, 107 (2d Cir. 2001). "Thus, when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome, . . . a case is moot and the federal court is divested of jurisdiction over it." <u>Id.</u> (internal quotation marks and citations omitted). "Where, as here, the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." <u>Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n</u>, 896 F.2d 674, 678 (2d Cir. 1990) (quotation omitted).

**B.** <u>**Rule 12(b)(6)**</u>

"To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . , the court is to accept as true all facts alleged in the complaint," <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 237 (2d Cir. 2007) (citing <u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." <u>Id.</u> (citing <u>Fernandez v. Chertoff</u>, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.</u>, 507 F.3d 117, 121 (2d Cir. 2007) (citing <u>Twombly</u>, 550 U.S. at 555).

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6)

purposes, consideration is limited to the factual allegations in plaintiff['s] . . . complaint, . . . to

documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of

which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which

plaintiff[] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987

F.2d 142, 150 (2d Cir. 1993). The Court may also take judicial notice of "state administrative

decisions in ruling on a Rule 12(b)(6) motion," including decisions from hearing officers and

state review officers in IDEA cases. Rutherford v. Fla. Union Free Sch. Dist., No. 16-CV-9778

(KMK), 2019 WL 1437823, at *2 (S.D.N.Y. Mar. 29, 2019) (citation omitted); Piazza v. Fla.

Union Free Sch. Dist., 777 F. Supp. 2d 669, 678 (S.D.N.Y. 2011) ("Although the Complaint

does not mention the [state review officer] Decision, the Court may consider it as a matter of

judicial notice."); Combier v. Biegelson, No. 03-CV-10304 (GBD), 2005 WL 477628, at *1

(S.D.N.Y. Feb. 28, 2005) (considering impartial hearing officer and state review officer

decisions on a Rule 12(b)(6) motion in an IDEA case).

## II.   ANALYSIS

### A.   The Parties' Arguments

DOE argues that Plaintiff's claims are moot because it paid all sums due under the

SRO's April 5, 2019 decision. (Def. Br. (Dkt. No. 55) at 8, 16) To the extent that Plaintiff seeks

relief for the period between July 9, 2018 and September 14, 2018, DOE argues that Plaintiff is

not entitled to such relief because, as the SRO found, O.F.'s program at the Brain Institute during

that time was "not substantially similar" to the program at his previous school, Hope Academy,

given the Brain Institute's lack of vision services. (Id. at 17-18) Even if the programs were

substantially similar, DOE argues that Plaintiff would fail to state a claim because – according to

DOE – when a parent "unilaterally places her child in the school of her choosing, without the

consent of state or local school officials," the parent is not "entitled to pendency funding for tuition."  (Id. at 19)

Plaintiff argues that she is entitled to "the full amount owed" to the Brain Institute for the 2018-19 year, including for the period between July 9, 2018 (O.F.'s first day of school and the day Plaintiff filed her due process complaint) and September 14, 2018.  (Pltf. Opp. (Dkt. No. 60) at 10; Apr. 5, 2019 SRO Decision (Dkt. No. 35-1) at 5 n.3, 6 n.5)  Because Plaintiff has not obtained payment for the period between July 9, 2018 and September 14, 2018, Plaintiff argues that this case is not moot.  (Pltf. Opp. (Dkt. No. 60) at 21)  According to Plaintiff, DOE's arguments ignore "established legal precedent" holding that "a parent is entitled to an educational placement – as pendency – provided that such educational placement is substantially similar to the student's 'then current' educational placement."  (Id. at 6)

### B.  **Applicable Law**

Title 20, U.S.C. § 1415(j) – IDEA's pendency or "stay-put" provision – provides that "during the pendency of any proceedings conducted pursuant to this section [of IDEA] . . . the child shall remain in the then-current educational placement of the child. . . ."  20 U.S.C. § 1415(j).  "Th[is] provision seeks to maintain the educational status quo while the parties' dispute is being resolved."  T.M., 752 F.3d at 152.

IDEA's pendency or "stay-put" provision "is, in effect, an automatic preliminary injunction.  The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and balance of hardships."  Zvi D. by Shirley D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982); see also Arlington Cent. Sch. Dist. v. L.P., 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006) ("Pendency has the effect of an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the

merits, and a balancing of the hardships."); <u>M.G. v. New York City Dep't of Educ.</u>, 982 F. Supp. 2d 240, 247 (S.D.N.Y. 2013) (same).  The purpose of this "automatic injunction" is "'that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with their placement is ultimately resolved.'"  <u>Student X v. New York City Dep't of Educ.</u>, No. 07-CV-2316 (NGG) (RER), 2008 WL 4890440, at *20 (E.D.N.Y. Oct. 30, 2008) (emphasis removed) (quoting <u>Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.</u>, 386 F.3d 158, 160-61 (2d Cir. 2004)).

The "automatic injunction takes effect only after the pendency placement determination is made," however.  <u>Angamarca v. New York City Dep't of Educ.</u>, No. 19 Civ. 2930 (PGG), 2019 WL 3034912, at *6 (S.D.N.Y. July 11, 2019)  "To determine a child's 'then-current educational placement,' a court typically looks to:  (1) 'the placement described in the child's most recently implemented IEP'; (2) 'the operative placement actually functioning at the time when the stay-put provision of the IDEA was invoked'; or (3) 'the placement at the time of the previously implemented IEP.'"  <u>Doe v. East Lyme Bd. of Educ.</u>, 790 F.3d 440, 452 (2d Cir. 2015) (quoting <u>Mackey</u>, 386 F.3d at 163).

C.    <u>Application</u>

Plaintiff seeks an injunction directing DOE to pay for O.F.'s full tuition at the Brain Institute for the 2018-19 school year, including the period between July 9, 2018 and September 14, 2018.  (Pltf. Opp. (Dkt. No. 60) at 15)

To the extent Plaintiff seeks payment for the period between September 14, 2018 and the end of school in 2019, her claim is moot.  O.F. completed the 2018-19 school year at the Brain Institute, and DOE paid $175,962.17 to the school to cover O.F.'s tuition from September 14, 2018 to the end of school in 2019.  (Liu Decl. (Dkt. No. 56) ¶ 2)  Accordingly, any claim for relief for the period between September 14, 2018 and the end of school in 2019 is moot.  <u>See</u>

<u>M.S. ex rel. M.S. v. New York City Dep't of Educ.</u>, 734 F. Supp. 2d 271, 273 (E.D.N.Y. 2010) ("Plaintiff has received exactly the kind of educational placement in a private school that he sought. The Department paid fully for that relief. . . . The case is dismissed as moot and without substantive basis.").

As to Plaintiff's claim for Brain Institute tuition for the period between July 9, 2018 and September 14, 2018 (Pltf. Opp. (Dkt. No. 60) at 21), the SRO concluded – in a thorough and well-reasoned decision – that funding was unavailable for this period because the Brain Institute and Hope Academy programs were not substantially similar, given the lack of vision education services at the Brain Institute. The SRO's decision on this point is entitled to deference. <u>See</u> <u>J.W. v. New York City Dep't of Educ.</u>, 95 F. Supp. 3d 592, 601 (S.D.N.Y. 2015) ("When, as here, 'the decisions of an [IHO] and [an SRO] conflict, the Court should generally defer to the [SRO's] decision, as the 'final decision of the state authorities.' . . . This is particularly true 'when the state officer's review has been thorough and careful.'") (quoting <u>F.B. v. N.Y.C. Dep't of Educ.</u>, 923 F. Supp. 2d 570, 578 (S.D.N.Y. 2013)); <u>see</u> <u>also</u> <u>Abrams</u>, 2019 WL 2385561, at *4 ("[A] federal court should not make substantial similarity determinations in the first instance when the Independent Hearing Officer or State Review Officer did not do so."); <u>Neske v. New York City Department of Education</u>, No. 19 Civ. 2933 (VEC), 2019 WL 3531959, at *6 n.4 (S.D.N.Y. Aug. 2, 2019) ("Courts should have the assistance of agency expertise when evaluating educational placements" and in determining whether programs are "substantially similar").

Although a footnote in Plaintiff's brief suggests that she disagrees with the SRO's determination as to "substantial similarity" (<u>see</u> Pltf. Opp. (Dkt. No. 60) at 21 n.4), Plaintiff has

made no serious effort to demonstrate that the programs were substantially similar before September 14, 2018.

The U.S. Department of Education's "longstanding position [is] that maintaining a child's placement in an educational program that is substantially and materially similar to the former placement is not a change in placement." Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities, 71 FR 46540-01 (Aug 14, 2006). The Department's Office of Special Education Programs has outlined four factors relevant to determining whether a student's move to a different school constitutes a change in educational placement for purposes of pendency under IDEA. Those factors are:

> [1] whether the educational program set out in the child's IEP has been revised; [2] whether the child will be able to be educated with nondisabled children to the same extent; [3] whether the child will have the same opportunities to participate in nonacademic and extracurricular services; and [4] whether the new placement option is the same option on the continuum of alternative placements.

Gore v. D.C., 67 F. Supp. 3d 147, 152 n.4 (D.D.C. 2014) (quoting Letter to Fisher, 21 I.D.E.L.R. 992 (1994) at 3). Generally, a change in educational placement occurs where there has been "a fundamental change in, or elimination of[,] a basic element of the [child's] education program." Id. (quoting Lunceford v. D.C. Bd. of Educ., 745 F.2d 1577, 1582 (D.C. Cir. 1984) (citing Concerned Parents v. New York City Board of Education, 629 F.2d 751 (2d Cir. 1980)); see also T.Y. v. New York City Dep't of Educ., 584 F.3d 412, 419 (2d Cir. 2009) (noting that "'[e]ducational placement' refers to . . . classes, individualized attention and additional services a child will receive"); 8 N.Y.C.R.R. 200.1(g) (providing that, under New York law, a change in a student's educational program occurs where there is "a change in any one of the components of the [IEP for] a student").

As the SRO explained, a March 2017 Functional Vision Assessment for O.F.

states that he "required vision education services in order to 'learn specialized strategies that will

help him enhance his visual skills which will in turn improve his ability to communicate.'" (Apr.

5, 2019 SRO Decision (Dkt. No. 35-1) at 8)  The assessment noted that "since the student was

non-verbal, vision was 'a main sensory area that he should be able to utilize for learning,' and

that the more his vision was 'utilized and developed with specialized techniques and

modifications . . . the greater his access to information would be,' as well as his ability to

communicate and use his assistive technology device effectively." (Id.)  The evaluator

"recommended that the student continue to receive vision services two times per week for 60-

minute sessions." (Id.)

The March 2017 proposed Hope Academy IEP for O.F. makes similar

observations, and recommends "two 60-minute sessions of vision services per week," and notes

that O.F. "would benefit from push-in and pull-out services in vision." (Id.)  The March 2018

Brain Institute IEP for O.F. discusses the "importance of vision education services" to O.F. and

notes that because he is "nonverbal, vision [is] a 'main sensory area that he should utilize for

learning.'" (Id. at 9)   The Brain Institute IEP recommends "vision education services twice per

week for 60-minute sessions" and "'consistent push-in and pull out vision services.'" (Id.)

Based on this record, the SRO correctly concluded that vision education services were

"importan[t]" and "integral" to O.F.'s program. (Id. at 10)

The SRO found, however, that there was "no indication . . . that staff at [the Brain

Institute] worked on the student's vision goals during the first eight weeks of the school year."

(Id.)  Moreover, when the Brain Institute IEP was reviewed in January 2019, there was "no

indication as to whether the vision section had been updated with information provided by staff

at [the Brain Institute], as it appear[ed] to be based on the student's progress during the 2017-18 school year," when O.F. was at Hope Academy. (Id.) Although an affidavit from the Brain Institute's director states that "any vision education services missed at the start of the school year would be made up during the 2018-19 school year, the affidavit was executed in January 2019 and there [was] no indication that the student had begun receiving make-up services." (Id.) There was also no "information as to how missed services might have impacted the student's educational opportunity, or whether the provision of missed services at a later date would adequately make up for the services missed receiving make-up services." (Id.)

Based on this record, the SRO concluded that the Brain Institute's educational program for O.F. did not become substantially similar to the Hope Academy educational program until September 14, 2018, when the Brain Institute began offering vision services to O.F.. By virtue of Plaintiff's unilateral placement of O.F. in the Brain Institute, there was, "at a minimum, a fundamental change in, or elimination of[,] a basic element of the [child's] education program." Gore, 67 F. Supp. 3d at 152 n.4; S.Y. v. New York City Dep't of Educ., 210 F. Supp. 3d 556, 571 (S.D.N.Y. 2016) ("removal of the one-to-one paraprofessional was a change in R.Y.'s educational placement"). Plaintiff has made no serious effort to argue otherwise.

Finally, Navarro Carrilo v. New York City Dep't of Educ., 384 F. Supp. 3d 441 (S.D.N.Y. 2019), is not to the contrary. In that case, the court found the lack of vision services at the Brain Institute to be "troubling," but nevertheless found the educational program there to be substantially similar to Hope Academy's educational program. Navarro Carrilo, 384 F. Supp. 3d at 461. As an initial matter, the plaintiff in Navarro Carrilo was challenging an "unreasonable" opinion of an impartial hearing officer, id. at 462, not a thorough and well-reasoned decision by

a state review officer that is entitled to deference.  See M.H. v. New York City Dep't of Educ.,

685 F.3d 217, 246 (2d Cir. 2012) ("[C]ourts must defer to the reasoned conclusions of the [state

review officer] as the final state administrative determination."); A.C. ex rel. M.C. v. Bd. of

Educ. of The Chappaqua Cent. Sch. Dist., 553 F.3d 165, 171 (2d Cir. 2009) ("If the [state review

officer's] decision conflicts with the earlier decision of the [impartial hearing officer], the

[impartial hearing officer's] decision may be afforded diminished weight.") (internal quotation

marks omitted).  The evidence in Navarro Carillo also showed that the student's "goals were

incorporated into the classroom setting during the time when a vision specialist was not

available," and "the classroom teacher supported [the student's] vision needs by strategically

implementing the IEP and presenting materials in a specific way throughout the school day."

Navarro Carrilo, 384 F. Supp. 3d at 461 (internal alterations and quotation marks omitted).  And

missed vision sessions were "in the process of being made up" at the time of the hearing before

the IHO.  Id.  These classes were "being scheduled during [the student's] 'free' time, when she

[was] not in another therapy or individual academics, but rather, [was] scheduled for non-

essential group activities such as morning meeting, afternoon recap, or read-alouds."  (Id.)

      There is no such evidence here.  To the contrary, even as of January 2019, months

after the Brain Institute began offering vision services, there was no indication that O.F. had

begun to receive make-up vision services.  (Apr. 5, 2019 SRO Decision (Dkt. No. 35-1) at 10)

      In sum, the Court finds no error in the SRO's conclusion that the educational

programs for O.F. at Hope Academy and the Brain Institute were not "substantially similar"

during the July 9, 2018 to September 14, 2018 time period.[7] Given these circumstances, Plaintiff

has no right to obtain payment from DOE for this time period.

---

[7] Because there is no basis for disturbing the SRO's determination that – between July 9, 2018 and September 14, 2018 – the Brain Institute's educational program for O.F. was not "substantially similar" to Hope Academy's educational program for O.F. – the Court does not reach the parties' arguments concerning the significance of parental unilateral removal of a child from a prior placement.

As DOE points out (Def. Br. (Dkt. No. 55) at 19), some district courts have held that parents who unilaterally remove their children from an approved school are ineligible for "stay-put" funding under 20 U.S.C. § 1415(j), even if the approved school and the new school are substantially similar. See, e.g., De Paulino v. New York City Department of Education, No. 19 Civ. 222 (GBD), 2019 WL 2498206, at *3 (S.D.N.Y. May 31, 2019) ("allowing parents to unilaterally move a student from his or her proper pendency placement simply because the parents allege their preferred placement is 'substantially similar' runs afoul of the 'stay put' provision's entire purpose, which is to protect the 'student's right to a stable learning environment during what may be a lengthy administrative and judicial review.'" (quoting Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir. 2002)); Neske, 2019 WL 3531959, at *7 ("§ 1415(j) does not require the City to fund a student's attendance at a preferred, 'substantially similar' school."); Hidalgo v. New York City Dep't of Educ., No. 19-CV-2590 (RA), 2019 WL 5558333, at *6 (S.D.N.Y. Oct. 29, 2019) ("Provided that the school the child was already attending, and the DOE was funding, remains available to service the child's IEP, § 1415(j) does not grant parents the authority to unilaterally move their children to a substantially similar school and compel the DOE to pay for it."); see also Mackey, 386 F.3d at 160 ("Parents should . . . keep in mind that if they unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local officials, they do so at their own financial risk.") (internal quotation marks and alterations omitted).

Other courts have held that "parents may move their child from a previously approved private facility to another private facility and still receive 'stay put funding'" – provided that the two schools are "substantially similar." See Navarro Carrilo, 384 F. Supp. 3d at 447-48; see also, e.g., Soria v. New York City Dep't of Educ., 397 F. Supp. 3d 397, 402 (S.D.N.Y. 2019) ("Parents may unilaterally transfer their child from an established pendency placement to another educational setting so long as they . . . establish that the two programs are substantially similar."); Abrams v. Carranza, No. 19 Civ. 4175 (AJN), 2019 WL 2385561, at *4 (S.D.N.Y. June 6, 2019) (parents are entitled to pendency tuition funding after unilaterally moving their child so long as parents demonstrate substantial similarity of programs).

It is not necessary to resolve this issue here, because the Brain Institute's educational program for O.F. was not "substantially similar" to Hope Academy's educational program for O.F. during the period between July 9, 2018 and September 14, 2018.

## **CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss (Dkt. No. 54) is granted. To the extent that Plaintiff seeks payment for the time period between July 9, 2018 and September 14, 2018, her claim is dismissed under Rule 12(b)(6). To the extent Plaintiff seeks payment for the time period between September 14, 2018 and the end of school, her claim is dismissed under Rule 12(b)(1) as moot. All other pending motions are denied as moot. The Clerk of Court is directed to close this case.

Dated: New York, New York
        March 20, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge